Lachman D. **GUPTA**

v.

**PENN JERSEY CORPORATION** and Penn Jersey Auto Stores Associates, Inc.

Civ. A. No. 83–0680.

United States District Court, E.D. Pennsylvania.

Feb. 16, 1984.

Jeffrey D. Millaway, King of Prussia, Pa., for plaintiff, Lachman D. Gupta.

Barry F. Schwartz, Philadelphia, Pa., for defendant, Penn Jersey Corp. and Penn Jersey Auto Stores Associates, Inc.

## MEMORANDUM AND ORDER

KELLY, District Judge.

Plaintiff, a former franchisee of Penn Jersey, filed this antitrust action on his own behalf and as a representative of all similarly situated past and present franchisees of Penn Jersey. Defendants are franchisors of small auto parts and accessories stores located in a four state area encompassing Pennsylvania, New Jersey, Maryland and Delaware.

In addition to a franchise fee, which is in consideration of the franchisee's use of the Penn Jersey trade name, defendants' franchise agreement required the franchisees to purchase inventory from defendant as a condition to purchasing the right to use the Penn Jersey name. Plaintiff contends that this constitutes an illegal tie-in of merchandise to the franchise under the Sherman Act, 15 U.S.C. § 1 (1982).

Plaintiff's complaint was filed on February 9, 1983. On November 15, 1983, prior to class certification, the parties agreed to a stipulation and proposed Order dismissing the class action allegations of the Complaint pursuant to a proposed settlement between the parties, subject to the approval of the Court. The terms of the settlement provided as follows:

(a) Penn Jersey and Mr. Gupta agree to voluntarily dismiss their respective claims with prejudice against each other in certain prior-filed litigation in the Delaware state court, each party to bear its own costs;[1]

(b) In light of the conclusion of plaintiff's counsel that this action is not properly maintainable as a class action, the parties will stipulate to striking the class action allegations;[2]

(c) Mr. Gupta will dismiss his individual claims with prejudice, and

(d) Penn Jersey will pay counsel's reasonable costs and attorneys' fees in the amount of $16,004.35.

Joint Memorandum of Law in Support of Striking Class Action Allegations ("Joint Memo") at 6. Effectuation of the proposed settlement is contingent on the Court's approval of the dismissal of the class allegations and its determination that no notice need be given to the class of the proposed settlement.

## DISCUSSION

■ Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Fed.R.Civ.P. 23(e). Although not specifically encompassed by the terms of Rule 23(e), it is now settled that "a suit brought as a class action should be treated as such for purposes of dismissal or compromise, until there is a full determination the class action is not proper." *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir.1970), *cert. denied sub nom. Glen Alden Corp. v. Kahan*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). Since Rule 23(e) applies, two further inquiries are required; first, whether approval of the settlement

1. Defendants claim against plaintiff was for approximately $35,000 for alleged nonpayment of advertising, royalties, merchandise, etc. Mr. Gupta counterclaimed in that action for approximately $66,000.

2. Plaintiff's conclusion that the action is not maintainable as a class action is based upon the following rationale:
   (1) There exists a conflict between the interests of former Penn Jersey licensees and past licensees so that any class which might be certified should be confined to past licensees; (2) A class composed of past Penn Jersey licensees since February, 1979 would not satisfy the numerosity requirement of Rule 23(a) because the 27 licensees are all located within a four-state area surrounding Philadelphia so that joinder would not be impracticable.
   Joint Memo at 5.

should be granted and second, whether putative class members should be notified.

The standards which have emerged in determining whether a settlement should be approved or notice given "focus primarily on the possibility that the pre-certification compromise is the product of collusion." *Magana v. Platzer Shipyard, Inc.*, 74 F.R.D. 61, 67 (S.D.Tex.1977). In addition consideration must be given to the possibility of prejudice to absent putative class members. *See Larkin Gen. Hosp., Ltd. v. American Tel. & Tel. Co.*, 93 F.R.D. 497, 501–02 (E.D.Pa.1982). Finally, the reliance interest of putative class members, which will vary according to the facts of each case, must be taken into account. *Id.*

Applying these criteria, I find that on its face the settlement does not appear collusive. Both parties apparently had substantial claims against each other which they have agreed to withdraw. The only person receiving direct monetary payment is plaintiff's counsel. The pendency of this class action has tolled the applicable statute of limitations and preserved the rights of all putative class members as they existed on the day of the filing of the complaint. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). The settlement itself will not prejudice absent class members since a "precertification dismissal does not legally bind absent class members." *Magana v. Platzer Shipyard, Inc., supra* at 69.

■ The question of notice is not, however, so easily resolved. We must determine, under the circumstances, whether notice should be given, and if so, to whom it should be given. As to the first inquiry, the Court notes that it is in agreement with those authorities which hold that notice to putative class members of a pre-certification dismissal or compromise is not mandated by Rule 23(e). *See Shelton v. Pargo*, 582 F.2d 1298 (4th Cir.1978); *Magana v. Platzer Shipyard, Inc., supra; Milones v. Amerada Hess Corp.*, 25 Fed.R.Serv.2d 738 (S.D.N.Y.1977), *cited with approval in Larkin Gen. Hosp. Ltd. v. American Tel.*

*& Tel. Co.*, 93 F.R.D. at 503. However, none of these cases hold that the Rule 23(e) notice provisions *never* apply at the precertification stage. Rather, "courts have adopted a more enlightened approach, which avoids judicial time expenditure and relieves the parties of the expense of notice when it is inappropriate, without circumventing the policies of 23(e). H. Newberg, Class Actions § 2620 at 240 (1977)."

A determination of whether notice is required rests upon the policies underlying Rule 23(e), namely, deterring collusion on the part of parties to the litigation, helping to guarantee an adequate consideration of the class interest and enabling potential class members to protect their own interests by allowing them to object to the application, to take over representation of the class action or to file their own suit elsewhere. *Magana v. Platzer Shipyard, Inc., supra* at 68. Hence, the *"presumption* should be that the spectre of abuse in an individual settlement and class dismissal at the precertification stage is sufficient to warrant notice to absent class members before court approval of any such arrangement." *Id.* at 69 (emphasis added).

■ Assuming that notice is required, it remains to determine to whom notice should be given. Counsel argues that case authority in this Circuit precludes a former franchisee from representing a class consisting of both former and present franchisees. *See Southern Snack Foods v. J & J Snack Foods*, 79 F.R.D. 678 (D.N.J.1978); *Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440 (E.D.Pa.1975); *Seligson v. Plum Tree, Inc.*, 61 F.R.D. 343 (E.D.Pa.1973). The rationale for this rule is that former franchisees may be motivated by the recovery of maximum damages without regard to any adverse impact on the continued economic viability and public good will of the present franchise network. *Southern Snack Foods v. J & J Snack Foods, supra* at 680. Thus, it appears that had a class been certified in this action, it would have consisted of no more than approximately 27 former franchisees of Penn Jersey.

Applying the foregoing to the facts of the present case, I conclude that notice to the former Penn Jersey franchisees is required. Under the circumstances it is quite possible that members of the class are aware of the pendency of the class action suit. The litigation was publicized in both the *Philadelphia Business Journal* and *Automotive News* shortly after the suit was filed. Millaway Aff. ¶ 8. At least one other franchisee wrote to inquire about the suit expressing a desire to join in the action. Millaway Aff. Exhibit A. Given the limited geographic range of the franchise network it is entirely possible that information concerning the suit has spread by word of mouth. Finally, because there are a relatively small number of putative class members, providing notice will not be burdensome or expensive. *Cf. Larkin Gen. Hosp., Ltd. v. American Tel. & Tel. Co.,* *supra* (no notice required to putative class of thirty thousand members).